# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

MATTHEW WHITTAKER                                                                    PLAINTIFF

v.                                            Case No. 4:24-cv-00960-KGB

EXPLORATORY VENTURES, LLC                                                          DEFENDANT

## OPINION AND ORDER

Plaintiff Matthew Whittaker filed this action alleging negligence against defendant Exploratory Ventures, LLC ("EV")[1] resulting from an accident that occurred while Whittaker was employed by Stevens Engineers & Constructors, Inc. ("Stevens"), a contractor who had been engaged to perform certain construction work at EV's plant in Osceola, Mississippi County, Arkansas (Dkt. No. 2). Before the Court are EV's motion *in limine* No. 1 and motion for summary judgment (Dkt. Nos. 21; 22). Whittaker has responded to both EV's motion *in limine* and motion

---

[1] Whittaker originally brought his complaint against Big River Steel, LLC ("BRS") (Dkt. No. 2). On January 21, 2026, the parties filed a joint motion to substitute party asking the Court to substitute EV for BRS (Dkt. No. 32). In an Order entered February 25, 2026, the Court treated the motion as an unopposed motion for leave to file an amended complaint to substitute EV for BRS as the defendant in this matter and granted the motion (Dkt. No. 50). Whittaker filed his amended complaint naming EV as the defendant throughout the complaint (Dkt. No. 54), and EV filed its response to the amended complaint (Dkt. No. 55). On March 4, 2026, the parties filed a joint motion to substitute party asking the Court to adopt, pursuant to Federal Rule of Civil Procedure 10(c), all past pleadings, discovery responses, disclosures, productions, deposition testimony, and expert designations previously made or provided in this litigation by BRS as if they had been made by the substituted defendant EV (Dkt. No. 56, at 1). In the motion, the parties stipulated and agreed that "all pleadings, discovery responses, disclosures, productions, deposition testimony, and expert designations previously made or provided by [BRS] in this action shall be deemed, for all purposes in this litigation, to have been made or provided by EV as if EV were the original named defendant, without the need for re-service or re-production." (*Id.*). In an Order filed June 1, 2026, the Court adopted the joint stipulation of the parties and stated that it would considered all productions and filings made by BRS in this action to have been made by EV pursuant to Federal Rule of Civil Procedure 10(c) (Dkt. No. 67).

for summary judgment (Dkt. Nos. 27; 29), and EV has replied to Whittaker's responses (Dkt. Nos. 36; 38).

Whittaker filed a motion to strike the affidavit of Brandon Melcic, a Project Manager for Stevens, that was attached in support of EV's motion for summary judgment (Dkt. No. 30). EV has filed responses in opposition to Whittaker's motion to strike Melcic's affidavit (Dkt. No. 39), and Whittaker has replied to EV's response to his motion to strike Melcic's affidavit (Dkt. No. 40). With the Court's permission, EV filed a sur-reply in support of its response in opposition to Whittaker's motion to strike the affidavit of Melcic filed in support of EV's motion for summary judgment (Dkt. No. 45).

On February 25, 2026, at the request of EV, the Court held a hearing on EV's motion *in limine* No. 1 (Dkt. Nos. 46; 47; 52). Following the hearing, Whittaker filed a motion for leave to file a motion to strike or disregard authority first raised at oral argument on the motion *in limine* (Dkt. No. 57). EV responded to Whittaker's motion for leave to file a motion to strike or disregard authority first raised at oral argument (Dkt. No. 58).

Finally, before the Court is EV's motion to continue trial (Dkt. No. 60). Whittaker has responded in opposition to EV's motion to continue trial (Dkt. No. 62).

For the following reasons, the Court denies Whittaker's motion to strike Melcic's affidavit in support of EV's motion for summary judgment (Dkt. No. 30); the Court grants EV's motion for summary judgment (Dkt. No. 22); the Court denies as moot EV's motion *in limine* No. 1, Whittaker's motion to strike or disregard authority first raised at oral argument, and EV's motion to continue trial (Dkt. Nos. 21; 57; 60).

### I.      Whittaker's Motion To Strike Melcic's Affidavit

Whittaker moves to strike the affidavit of Melcic, Stevens's Project Manager, pursuant to Federal Rule of Civil Procedure 37(c) (Dkt. No. 30).  In his motion, Whittaker claims that Melcic was never disclosed as a witness by EV in its initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1)(A)(i) and that EV has never supplemented its disclosures to identify Melcic as a witness (*Id.*, ¶¶ 2–3).  Whittaker argues that the failure to identify Melcic is not substantially justified or harmless because EV's motion for summary judgment relies heavily on Melcic's affidavit and Whittaker has not had an opportunity to depose Melcic (*Id.*, ¶¶ 6–8).  Whittaker argues that Rule 37(c)(1) prohibits EV from using Melcic as a witness to support its dispositive motion because he was not disclosed (*Id.*, ¶ 10).

EV responds in opposition to Whittaker's motion to strike Melcic's affidavit and states that it listed Melcic as a fact witness in its Rule 26 initial disclosures (Dkt. No. 39, at 2).  EV identified Melcic as potential fact witnesses in its Rule 26 disclosures when it identified "[u]nknown employee(s) of Stevens . . . including but not limited to **those identified in Stevens' incident report**." (Dkt. Nos. 39, at 2–3; 39-1, at 4; 39-2) (emphasis added).  EV points out that Melcic is identified in Stevens' incident report as the "Site Manager/Superintendent." (Dkt. No. 39, at 3).  EV also points out that it identified "anyone referenced in any discovery and/or documents produced in this matter" as a witness in its initial disclosures (Dkt. No. 39, at 4 (citing 39-1, at 4)).  EV explains that Melic can be found throughout the documents provided by EV in its Rule 26 disclosures including on various invoices, progress payments, correspondence regarding the incident, and a safety stand down document (Dkt. No. 39, at 4 (citing 39-3)).  Finally, EV maintains that it identified as a witness "[a]ny witness listed on the disclosures of any other party in this action," and Whittaker listed "[a]ny witness listed in any investigation conducted by . . . Plaintiff's

employer." (Dkt. No. 39, at 4). EV points out that Melcic is listed in Stevens's incident report and that Stevens was Whittaker's employer (*see* Dkt. No. 39-1). Accordingly, EV argues that it disclosed Melcic as a witness "listed on the disclosures of any other party in this action" because Whittaker also listed Melcic as a potential witness resulting from Melcic's name being on Stevens' incident report (Dkt. No. 39, at 4).

In his reply in support of his motion to strike Melcic's affidavit, Whittaker argues that EV's disclosure of Melcic as a witness was not proper because EV did not provide "the name and, if known, the address and telephone number" for Melcic (Dkt. No. 40, at 1–2). Whittaker argues that the purpose of Rule 26 is to eliminate surprise and promote fair and efficient discovery (*Id.*, at 2). The Court agrees that the purpose of Federal Rule of Civil Procedure 26(a)(1)(A)(i) is to eliminate surprise and promote fair and efficient discovery. Further, in this Court's view, EV's actions skirt close to the line of what is acceptable conduct during discovery. However, on this record, the Court declines to strike the affidavit. Whittaker suggests that EV's reference to Melcic's name in the incident report is insufficient, but Whittaker cites this Court to no authority to support his proposition. The Court finds that because Melcic and Whittaker were both employees of Stevens, because Stevens is not a party to this action, because the number of Stevens employees identified in the incident report with potentially relevant information by Whittaker's own admission was approximately 14 (*Id.*), and because Whittaker had listed Melcic as a potential witness in his Rule 26 disclosures in a similar fashion, it was likely that Whittaker could have contacted Melcic or obtained Melcic's contact information if he had desired to do so.

Whittaker argues that he suffered harm because he has not been able to depose Melcic or prepare to address his testimony (Dkt. No. 30, ¶ 7). EV responds that, at most, any failure to disclose or supplement its disclosures was harmless error under Federal Rule of Civil Procedure

4

37(c)(1) because Whittaker knew Melcic personally and disclosed Melcic as a fact witness himself (Dkt. No. 39, at 5–7). EV argues that Whittaker sought discovery from Stevens in this litigation and could have requested the deposition of Melcic, who was employed by Stevens as a project manager and was the Site Manager/Superintendent for Stevens for the project at the time of the incident (*Id.*, at 5). EV maintains that the affidavit confirms facts that were already accessible to Whittaker through discovery or are already otherwise in evidence and that there is no reason to strike the affidavit (*Id.*, at 5–6).

The Court agrees with EV that much, if not all, of the facts set forth in Melcic's affidavit are in evidence elsewhere in the record before the Court. Further, any additional discovery sought by Whittaker, including Melcic's deposition had Whittaker opted to pursue it, could have been requested when Whittaker conducted discovery of third party Stevens and Stevens's employees. Accordingly, the Court denies Whittaker's motion to strike Melcic's affidavit offered by EV in support of its motion for summary judgment. Moreover, because much, if not all, of the facts set forth in Melcic's affidavit are in evidence elsewhere in the record before the Court, even if the Court were to strike Melcic's affidavit, the Court still would grant summary judgment in favor of EV.[2]

## II.   EV's Motion For Summary Judgment

### A.   Background

EV filed a statement of undisputed facts in support of its motion for summary judgment to dismiss Whittaker's claims against it (Dkt. No. 24). Whittaker filed a response to EV's statement

---

[2] When confronted with this contention by EV's response to the motion to strike, Whittaker fails to identify for the Court a fact in record evidence supplied solely by Melcic's affidavit. An example of facts set forth in Melcic's affidavit that are in evidence elsewhere in the record before the Court is the fact that the RTC casing where Whittaker was injured was erected and set the morning of the accident (Dkt. No. 22-2; 22-4, at 5; 22-6, ¶ 10–12).

of undisputed facts and a statement of additional material facts (Dkt. No. 28). The following facts are taken from EV's statement of undisputed facts, Whittaker's response, and Whittaker's statement of additional material facts that are supported by the record. To the extent the parties disagree on purported statements of undisputed material fact, the Court has not deemed those facts undisputed. In reaching a determination on the pending motion for summary judgment, the Court has reviewed the record evidence in this case in the light most favorable to Whittaker, as the Court is required to do at this stage.

On July 28, 2023, Stevens entered into a construction agreement to perform construction work in exchange for payment (the "Prime Contract") at the steel production facility and mill known as EV in Osceola, Arkansas (the "Project") (Dkt. No. 28, ¶ 1). Stevens served as the mechanical equipment installation contractor for the Project, and its work included setting and aligning various large metal components and welding the connections that together comprise the furnace system of the continuous galvanized line facility (*Id.*, ¶ 2).

Article 32, Section D, of the Terms and Conditions of the Prime Contract provides that Stevens is an independent contractor and that EV is neither considered as, nor operating as or performing the duties of, a general or prime contractor in any capacity, and shall not be construed as such in any legal proceeding, administrative action, claim, or citation (*Id.*, ¶ 3). Article 24, Section D of the Terms and Conditions of the Prime Contract provides that Stevens "shall be solely responsible for all construction means, methods, techniques, sequences and procedures; and shall coordinate all portions of the Work under the Construction Agreement, subject to the overall coordination with Owner, Construction Engineer and Engineering Firm(s)" (*Id.*, ¶ 4). Article 13 of the Terms and Conditions of the Prime Contract required Stevens to have and adhere to its own safety program "ensuring safe working conditions at the Premises at all times." (*Id.*, ¶ 5).

Stevens's responsibility for the safety of its work on the Project pursuant to the Prime Contract included Stevens agreeing to take, "all precautions which are necessary to protect against any conditions created during the progress of [Stevens's] activities which involve any risk of bodily harm to persons or a risk of damage to any property." (*Id.*, ¶ 6). During Stevens's working hours on the Project, Stevens further agreed to inspect continuously the work, materials, and equipment to discover and determine any such conditions and to be solely responsible for discovery, determination, and correction of any such conditions which affect the safety and health of employees (*Id.*, ¶ 7).

The work performed by Stevens and Whittaker that caused Whittaker's injuries – entering and setting the RTH casings – constituted integral parts of Stevens's work for which it was contracted to perform on the Project, as it was the crux of the contract Stevens and EV entered into (*Id.*, ¶ 8). This integral part of the work Stevens was required to perform under the Prime Contract included setting RTH casings that were manufactured by others and shipped to the Project (*Id.*, ¶ 9). As part of this work, Stevens was also required to receive and take possession of the RTH casings upon delivery to the Project site and store them until they were ready to be erected (*Id.*, ¶ 10).

On February 17, 2024, Whittaker was employed by Stevens as a boilermaker (*Id.*, ¶ 11). On February 17, 2024, Stevens by and through its employees erected and set the RTH casing which is in issue herein (*Id.*, ¶ 12). Also on February 17, 2024, Whittaker fell through that same RTH casing while in the course and scope of the performance of his work duties for Stevens; this fall caused the personal injuries that are the subject of this action (*Id.*, ¶ 13).

On the morning of February 17, 2024, and before Whittaker's fall, Stevens held a daily crew pre-task planning and safety meeting regarding the work Stevens was to perform that day,

including setting the RTH casings (the "Safety Meeting") (*Id*., ¶ 14).  Whittaker admitted that he attended the Safety Meeting and signed the Foreman's Daily Pre-Task Plan (*Id*., ¶ 15).  At the Safety Meeting, Stevens discussed the safety risks and required preventative measures of its employees to avoid the safety risks associated with Whittaker, among others, entering and installing RTH casings (*Id*., ¶ 16).  Specifically, Stevens notified Whittaker, among others, that making entry into and setting the RTH casings presents fall hazards that could result in serious injuries, and required Whittaker, among its other employees, to be tied off to a personal fall protection system during the entirety of the time spent working on, entering, and setting the RTH casings and exclusively walk on the iron when making entry into the RTH casings (*Id*., ¶ 17).

On February 17, 2024, Whittaker admitted that he crawled into RTH casing, untied his personal fall protection system, planted his knees on the plywood boards at the bottom of the casing, and then fell through the RTH casing (*Id*., at 18).  This fall caused Whittaker's personal injuries, which are the subject of this action (*Id*.).  Whittaker admitted that he alone made the choice to untie his personal fall protection system after making entry into the RTH casing, despite nobody from Stevens (or EV) having instructed him to do so; further, no one from Stevens (or EV) informed him it was safe to do so (*Id*., ¶ 19).

Stevens not only understood its sole responsibility regarding the safety of its employees while working on the Project, but it affirmatively acted upon this responsibility by instructing its employees, including Whittaker, on the preventative measures required to avoid injuries when performing its work regarding entering and setting the RTH casings including on the morning of the accident (*Id*., ¶ 20).  The hidden dangers or unusually hazardous conditions associated with Whittaker entering and setting the RTH casings were, in fact, known by Whittaker ahead of him performing this work and injuring himself (*Id*., ¶ 21).

Whittaker was aware of the requirement to always be tied off while working over four feet (*Id.*, ¶ 22). Whittaker was warned specifically of the potential to fall through the RTH casing and was instructed to always be tied off to a personal fall protection system when working on the RTH casing at an elevation above four feet (*Id.*, ¶ 23). Whittaker admitted that he had prior knowledge of the dangers associated with entering and setting the RTH casings, and was instructed on the proper preventative safety measures to follow to avoid injuries associated therewith (*Id.*, ¶ 24). Whittaker admitted that he untied his personal fall protection system when he entered and subsequently fell through the RTH casing, despite having been instructed to the contrary by Stevens and told that it was unsafe to do so (*Id.*, ¶ 25). No one ever told Whittaker that the casing he was to enter was safe, Whittaker made his own decision to untie (*Id.*, ¶ 26).

Whittaker admitted that he is both OSHA 10 and OSHA 30 certified (*Id.*, ¶ 27). Whittaker admitted that he was also trained by Stevens specifically regarding this Project's safety requirements to avoid potential injuries resulting from Stevens's work to be performed on the Project (*Id.*, ¶ 28). The very hazard that ultimately caused his personal injuries was made known to Whittaker ahead of Whittaker unilaterally electing to untie his personal fall protection system and falling through the RTH casing shortly thereafter (*Id.*, ¶ 29).

Stevens had sole possession of the RTH casing from the time it was delivered to the Project site through installation and Whittaker sustained his injuries from falling through it (*Id.*, ¶ 30). EV never took possession of or inspected the RTH casing prior to Whittaker sustaining his injuries. (*Id.*, ¶ 31).

Whittaker asserts the following statement of additional material facts in support of his response to EV's motion for summary judgment. EV's safety personnel coordinated with Stevens' safety foreman to remedy the dangerous condition posed by the plywood flooring in the RTH

casing following the incident injuring Whittaker (Dkt. No. 28, at 9, ¶ 1).  EV safety personnel held a weekly construction meeting with all contractors working on the continuous galvanizing line in which areas of safety hazards were discussed (*Id.*, at 10, ¶ 2).[3]

EV is the owner of the physical facility where the RTH casings were installed and the ultimate owner of the RTH casings (*Id.*, ¶ 4).

EV's safety supervisor Raymond Tarrow admitted that, immediately upon inspection, it was obvious to him that the plywood flooring on the RTH casing violated OSHA standards (*Id.*, ¶ 5).[4]  EV performs periodic "safety go looks" in which EV views areas for "safety stuff" and communicates its findings to contractors (*Id.*, ¶ 6).  EV safety personnel conduct team safety walks in which they are shown safety concerns and corrections can be made (*Id.*, ¶ 7).

### B.    Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact for trial).

---

[3] The Court has reviewed the record evidence cited, but it does not support the statement of material fact made by Whittaker in paragraph three of his statement of additional material facts.  Accordingly, the Court has not included the statement.

[4] The Court has reviewed the record evidence cited, but it does not fully support the statement of material fact made by Whittaker in paragraph four of his statement of additional material facts.  Accordingly, the Court has modified the statement to reflect the record evidence.

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.  In ruling on a motion for summary judgment, "[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "[T]he mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Becker v. City of Hillsboro, Missouri*, 125 F.4th 844, 851 (8th Cir. 2025), *cert. denied,* 145 S. Ct. 2777 (2025) (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### C.   Discussion

#### 1.   Summary Of The Parties' Arguments

Whittaker brings a negligence claim against EV resulting from injuries he suffered when he was performing job duties for Stevens, who had been contracted to perform construction work for EV on its premises.  Whittaker was not an employee of EV at the time of the accident.  Stevens had erected and set a large RTH casing approximately ten feet above the facility's ground floor. Whittaker was tasked by Stevens to go inside of the casing to inspect it.  While inspecting the casing, Whittaker fell through a plywood floor in the casing onto the concrete floor of the facility causing personal injuries at issue in this matter.   Stevens agreed in the Prime Contract to continuously inspect the work, materials and equipment and to be solely responsible for discovery, determination, and correction of any conditions which affect the safety and health of employees (*Id.*, ¶ 7).  The RTC casing where Whittaker was injured was erected and set the morning of the accident (Dkt. No. 22-2; 22-4, at 5; 22-6, ¶ 10–12).

In its motion, EV argues that it is entitled to summary judgment because EV does not have a duty to Whittaker or did not breach a duty owed to Whittaker regarding work that he was performing as an employee of Stevens at the time of his injuries (Dkt. No. 23, at 6–14). Specifically, EV maintains that under Arkansas law it owed Whittaker no duty:  (1) to warn Whittaker of any danger associated with Whittaker entering or setting the RTH casings because Whittaker was performing an integral part of Stevens's work on the Project when he was injured; and (2) to warn Whittaker of any dangers associated with Whittaker entering and setting the RTH casings because EV retained no control over the manner in which Steven performed its work on the project (*Id.*).  EV also asserts that the Court should grant it summary judgment because

Whittaker assumed the risks associated with setting and entering the RTH casings which caused his injuries (*Id*., at 14–16).

In his response to EV's motion for summary judgment, Whittaker argues that, while duty is a legal issue, it is driven by facts and that there is a genuine issue of material fact in dispute regarding whether EV had a duty to warn Whittaker (Dkt. No. 27, at 2–7).  Whittaker also argues that EV undertook a duty by its actions (*Id*., at 7–10).  Finally, Whittaker argues that assumption of the risk is a matter of comparative fault left to the jury (*Id*., at 10–11).

In its reply to Whittaker's response, EV argues that duty is purely a question of law for the Court, that no duty existed to warn of hazards of which EV had no knowledge, and that EV's actions did not create a duty (Dkt. No. 36, at 4–13).  Finally, EV addresses Whittaker's assumption of the risk argument (*Id*., at 13–14).

### 2.    Negligence Standard

Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove the following:  (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; and (3) that the breach was the proximate cause of the plaintiff's injuries.  *Branscomb v. Freeman,* 200 S.W.3d 411, 416 (Ark. 2004).  If no duty of care is owed, summary judgment is appropriate.  *Smith v. Hansen*, 914 S.W.2d 285, 289 (Ark. 1996).

In his response to EV's motion for summary judgment, Whittaker argues that, while duty is a legal issue, it is driven by facts (Dkt. No. 27, at 2–3).  Whittaker cites the Arkansas Supreme Court case of *Marler v. Daniel* for the proposition that "[t]he question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." (*Id*.).  247 S.W.3d 473, 476 (Ark. 2007) (citing *Lawhon Farm Supply, Inc. v. Hayes,* 870 S.W.2d 729 (Ark. 1994); *Keck v. American Employment Agency, Inc.,* 652 S.W.2d 2 (Ark. 1983)).  Despite

acknowledging that duty is a legal issue, Whittaker argues that Arkansas cases deciding whether a duty arises "turn on the facts defining the relationship between the parties to the suit and the foreseeability of harm." (*Id*., at 3).

It is well settled under Arkansas law that "[w]hether a duty is owed to a plaintiff is a matter for the court to decide as a question of law." (Dkt. Nos. 27, at 23; 36, at 4–5). *Duran v. Sw. Arkansas Elec. Coop. Corp.*, 537 S.W.3d 722, 727 (Ark. 2018) (citing *D.B. Griffin Warehouse, Inc. v. Sanders*, 76 S.W.3d 254 (Ark. 2002) (determining that no duty existed for employer to warn employee of independent contractor of obvious danger of working near energized electrical transformer); *see also Pinson v. 45 Dev., LLC*, Case No. 2:12-CV-02160, 2013 WL 5348478, at *5 (W.D. Ark. Sept. 23, 2013) (citing *Crenshaw v. Arkansas Warehouse, Inc.*, 379 S.W.3d 515 (Ark. App. 2010)), *aff'd,* 758 F.3d 948 (8th Cir. 2014) (determining that there was no duty for employer property owner to warn employee of independent contractor of obvious hazard integral to his work); *Marlar*, 247 S.W.3d at 476 (finding on summary judgment that no legal duty existed). Accordingly, the Court will analyze whether EV owes Whittaker a duty.

Here, based on the undisputed material evidence in the record, the relationship between the parties is that of an employer and the employee of an independent contractor. It is undisputed that there was a Prime Contract between EV and Stevens that provided for Stevens to perform work at EV's plant, which included work on the RTH casings (Dkt. No. 22-1). At the time of the accident, Whittaker was an employee of Stevens (Dkt. No. 28, ¶¶ 11–13). The relationship between the parties is clear, and the Court will analyze whether there was a duty owed between EV, as an employer, and Whittaker, as the employee of an independent contractor, based on the undisputed record before the Court.

14

### 3.    EV Had No Duty To Warn Whittaker

The parties disagree whether EV had a duty to warn Whittaker of any dangers associated with Whittaker entering and setting the RTH casings on the Project on the day he was injured.  EV argues that it had no duty because Whittaker was performing an integral part of Stevens's work on the Project, and Whittaker argues that EV assumed a duty to warn Whittaker because it had knowledge of the hazard at issue.

### a.    Undisputed Material Facts

A review of the undisputed material facts related to the duty to warn issue is helpful.   EV and Stevens entered into the Prime Contract for Stevens to serve as the mechanical equipment installation contractor for the Project.  As part of the Prime Contract, Stevens's work included setting and aligning various large metal components, including RTH casings and welding connections, that together comprise the furnace system of the continuous galvanized line facility (Dkt. No. 22-1).

On February 17, 2024, Whittaker crawled into the RTH casing, untied his personal fall protection system, planted his knees on the plywood boards at the bottom of the casing, and then fell through the RTH casing (Dkt. No. 28, ¶ 18).  Whittaker was warned specifically by Stevens of the potential to fall through the RTH casing and was instructed by Stevens to always be tied off to a personal fall protection system when working on the RTH casing at an elevation above four feet (*Id*., ¶ 23).  Whittaker untied his personal fall protection system despite having been told that it was unsafe to do so by Stevens (*Id*., ¶ 25).  No one ever told Whittaker that the casing he was to enter was safe; Whittaker made his own decision to untie.  Moreover, Whittaker admits that "[t]he very hazard that ultimately caused his personal injuries was made known to him ahead of him

unilaterally electing to untie his personal fall protection system and failing through the RTH casing shortly thereafter" (*Id.*, ¶ 29).

Under the Prime Contract, Stevens is an independent contractor, and EV is neither considered as, nor operating or performing the duties of, a general or prime contractor (Dkt. No. 22-1, at Article 32, Section D of the Terms and Conditions). The Prime Contract provides that Stevens is solely responsible for "all construction means, methods, techniques, sequences and procedures; and shall coordinate all portions of the Work under the Construction Agreement. . . ." (*Id.*, at Article 24, Section D of the Terms and Conditions). Stevens agreed to take "all precautions which are necessary to protect against any conditions created during the progress of [Stevens's] activities which involve any risk of bodily harm to persons or a risk of damage to any property." (*Id.* at Article 13, Section A of the Terms and Conditions). Stevens further agreed to inspect continuously the work, materials, and equipment to discover and determine any such conditions and to be solely responsible for discovery, determination, and correction of any conditions which affect the health and safety of employees (*Id.*). The work performed by Stevens and Whittaker that caused Whittaker's injuries – entering and setting the RTH casings – constituted an integral part of Stevens's work that it was contracted to perform on the Project (*Id.*, ¶ 8).

### b.    Law - Duty To Warn

An employer of an independent contractor "owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Jackson v. Petit Jean Elec. Co-op.*, 606 S.W.2d 66, 68 (Ark. 1980). This duty of an employer of an independent contractor does not contemplate a duty to warn of obvious hazards which are an integral part of the work the independent contractor was hired to perform. *Id.*; *see also D.B. Griffin Warehouse, Inc.*, 76 S.W.3d at 262.

16

In *Jackson v. Petit Jean Electric Co-op*, an employee brought suit against an electric co-op, which contracted with his employer, seeking damages for injuries.  606 S.W.2d at 68.  The employee was injured by energized electric lines while working to rebuild new transmission and distribution lines of the electric transmission system.  The Arkansas Supreme Court concluded that not only did Petit Jean Electric Co-op not have a duty to warn employees that the work would be dangerous but also that Petit Jean Electric Co-Op did not have a duty to insulate or isolate hot wires or to deenergize electrical lines because the independent contractor's "compensation and contractual obligations expressly contemplate[d] working around energized lines."  *Id*. at 68; *see also Chew v. Am. Greetings Corp.*, 754 F.3d 632 (8th Cir. 2014) (applying Arkansas law and determining that injury to electrical utility employee resulted from "obvious risks of electricity inherent in their profession").

In *D.B. Griffin Warehouse v. Sanders*, the plaintiff's husband died when he fell through a skylight while painting.  76 S.W.3d at 254.  The plaintiff sued, and the jury awarded damages.  The Arkansas Supreme Court reversed and dismissed the case holding that the independent contractor's employees "were aware that the skylights posed an obvious hazard or danger that was an integral part of the work [the independent contractor] was hired to perform.  Therefore, [the defendant] had no duty to warn of these dangers because they were obvious and part of the work."  76 S.W.3d at 262.

### c.    Discussion – Duty To Warn

Like in *Jackson* and *Griffin*, based on the undisputed material facts in the record evidence before the Court, Stevens's employees, including Whittaker, were aware of the dangers of entering and setting RTH casings at a height above four feet because it constituted an integral and essential part of the work Stevens was expressly contracted to perform on the contract.  Stevens had control

17

of the work on the RTH casing under the Prime Contract.  Stevens, not EV, scheduled this portion of the work to be performed on the RTH casing, and Stevens discussed the potential hazards and preventative safety measures associated with the work at a Safety Meeting with its employees, including Whittaker, on the morning of February 17, 2024 (Dkt. Nos. 22-2; 22-6, ¶¶ 21, 22). Stevens was in possession and control of the RTH casing at the time of the accident.  Further, under the Prime Contract, Stevens accepted sole responsibility for all construction means, methods, techniques, sequences, and procedures as well as responsibility for safety for the Project. The undisputed material evidence on the record before the Court establishes that Stevens was serving as an independent contractor to EV at the time of the accident and that Stevens was in sole possession of the RTH casing at the time of the accident.  Additionally, Whittaker was entering the casing to perform an inspection that was a necessary part of Whittaker's work for Stevens under EV's Prime Contract with Stevens (Dkt. No. 23, at 9).

The Court determines, based on the undisputed material facts, that EV did not have a duty to warn Whittaker about the RTH casing that caused Whittaker's injury because the RTH casing was an obvious danger for Whittaker in his role as a boilermaker, and it was integral to the job that he was performing for independent contractor Stevens.  *See D.B. Griffin Warehouse, Inc*, 76 S.W.3d at 259.

### 4.   EV Had No Duty To Warn Of Inadequte Plywood Because It Did Not Have A Duty To Warn Of Hazards Of Which It Had No Knowledge

Whittaker argues that EV had a duty to protect the employees of its contractors from hazards of which it knew or should have known, and Whittaker asserts that here EV failed to "exercise reasonable care regarding the casing's hazardous plywood flooring." (Dkt. No. 27, at 6). To support his argument, Whittaker asserts that EV's "safety head observed immediately upon

viewing the plywood flooring on the RTH casing that it was a safety hazard." (*Id.*).  Based on the reference to this testimony, Whittaker argues that a juror could conclude that EV should have known about the danger of the plywood and remedied the hazard.  The Court disagrees.

Bryant Givens, EV's Construction Coordinator for the Project, testified that EV did not install the plywood flooring in the RTH casing, nor did EV direct anyone to place the plywood flooring in the RTH casing (Dkt. No. 27-1, at 60).  Givens further testified that EV did not take possession of the RTH casing prior to the accident (*Id.* at 61).[5]

Raymond Tarnow, EV's Senior Manager and Director of the Safety and Medical Departments, testified that he walked the facility all the time, was in the area of Whittaker's accident the day before it happened, and did not recall that section of the RTH casing where the accident occurred being there (Dkt. No. 27-2, at 18).  Tarnow testified:

Q    Prior to the day of the incident, had you seen that casing?

A    No.

(Dkt. No. 27-2, at 18:6-8).

A    Because I was there on Friday the day before, and that piece, I don't recall that piece being there.

Q    What piece?

A    Not just the casing, but the furnace itself.  I don't recall that – I don't recall that section being installed.  So, I don't recall.

Q    So, you were there the day before this happened?  You were at that facility the day before it happened?

---

[5] There is record evidence that the furnace, of which the RTH casing that was involved in this incident was a part, was not finished and accepted by EV until the middle of 2024, several months after Whittaker's accident (Dkt. No. 22-5, ¶ 16).

A      I walked – I walked the entire construction site all the time.

(Dkt. No. 27-2, at 18:17–19:1).

Additionally, Tarnow testified that he was not at the EV plant at the time that the accident happened because he "had coverage that weekend." (*Id*., at 11).  Tarnow testified that he arrived at the EV plant shortly after the accident (*Id*.).  Tarnow testified as follows regarding his inspection of the accident site after the accident:

> Q      What do you remember doing next and what specifically do you remember finding out as you're looking to see whether or not anybody else is going to be exposed to the hazard?
>
> A      So, I remember walking up to the area, I walked up, looked, and I immediately recognized the plywood that was on the ground.  I looked, and I seen that all the decking was missing, indicating that 100 percent tie-off would have been required.  I noticed that the area that you make entry into would have been some type of confined space, so there would have been some type of tie-off required for entry, some type of gas testing requirement for that, and under 1926.502, the plywood that was on the floor, there was no "hole" or a "cover" marking indicating that falls under 502 is a requirement in construction that was not properly done on the plywood, and it was also not adequate plywood that would have been used or needed to be used under construction – under OSHA construction guidelines.
>
> Q      So, you went up, was the – what would you call it, the stairwell, or what would you –
>
> A      No, sir, I did not go up.  I didn't – I did not leave the platform – or I did not –
>
> Q      Okay.
>
> A      -- leave the ground floor because there was not decking, and I did not have fall protection on.
>
> Q      So, when you said you walked up, tell me what you mean by that.
>
> A      I approached the area on – staying on the ground.

(Dkt. No. 27-2, at 11, 14–15).

Givens testified:

Q       So, before the day of this incident, had you ever noticed whether or not there was particle board flooring in those casings, did you even know they were there?

A       No.

(27-1, at 30:15–18)

Q       Prior to the incident in question, was [EV] ever made aware of any allegations or issues with the plywood that was used inside of the casings?

A       No.

(27-1, at 61:17–20). That record evidence alone is sufficient to grant summary judgment in favor of EV on this point; there is no record evidence cited by Whittaker that calls this into question or creates a disputed issue of material facts as to this point.

Moreover, in his affidavit, Melcic confirmed that the RTH casing involved in the accident was not erected and set by Stevens's employees until the morning of the accident (Dkt. No. 22-6, ¶ 12). This reinforces Tarnow's testimony that he did not see the hazard during his walk of the property the day before the accident (Dkt. No. 22-6, ¶ 12).

Whittaker argues that the "unmarked plywood flooring in the RTH casing constituted a hidden danger that was not obvious to Whittaker," but Whittaker has failed to establish that the unmarked plywood flooring was either known to anyone at EV prior to the accident or should have been known to anyone at EV prior to the accident, given that Stevens was in control of the RTH casing at all times, including when the accident occurred and until the RTH casing was released to EV. Tarnow's knowledge from observing the plywood on the ground following the accident does not impose upon EV a duty to remedy a hazard of which it did not have knowledge prior to the accident (Dkt. No. 28, ¶ 31).

Furthermore, there is no evidence on the record before the Court to indicate that EV or Tarnow should have known of the hazard prior to the accident. Whittaker points to EV's regular meetings with contractors and Tarnow's routine walks of the property, but according to the undisputed evidence in the record neither Tarnow nor Givens had seen plywood in the RTH casings to put either of them on notice of a hazard prior to the accident.

Moreover, Whittaker admits that "[t]he very hazard that ultimately caused his personal injuries was made known to him ahead of him unilaterally electing to untie his personal fall protection system and failing through the RTH casing shortly thereafter" (Dkt. No. 28, ¶ 29).

Based on the undisputed material evidence on the record before the Court, the Court determines that EV had no duty to warn Whittaker of the hazard of the plywood flooring in the RTH casing because it had no notice of the hazard and it had no reason to know of the hazard prior to Whittaker's accident.

### 5.    EV Had No Duty Because Of Its Other Actions

Whittaker maintains that EV undertook a duty by its actions citing the Restatement (Second) Torts § 414 and *Elkins v. Arkla, Inc.*, 849 S.W.2d 489 (Ark. 1993). Section 414 of the Restatement (Second) Torts provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

To support his claim that EV retained control, Whittaker argues that EV coordinated with Stevens's safety foreman to remedy the condition posed by the plywood flooring in the RTH casing following the incident that injured Whittaker. Givens testified that he was approached by Stevens's "safety" and "foreman" and EV's "safety" about putting up scaffolding underneath the bottom of the furnaces as a way of preventing another accident (Dkt. No. 27-1, at 18). Givens

testified that he "coordinated with the contractor and the scaffolding contractor, to come over and get with Stevens for them to show them where they needed the scaffolding" (*Id.*).

This case is distinguishable from *Elkins*, where the Arkansas Supreme Court denied summary judgment because of a question about whether Arkla's actions indicated a duty to the employee of a subcontractor. *Elkins*, 849 S.W.2d at 490. Under Arkla's contract with the subcontractor, Arkla retained the authority to require removal of any employee who, in its opinion, was incompetent or unqualified. *Id.*, at 491. Further, Arkla could make minor changes to the work to be performed by the subcontractor, could terminate the contract with the subcontractor with seven days prior notice, and could "direct supervision of inspectors" whose duty it was to see that the work was performed properly. *Elkins*, 849 S.W.2d at 491. Here under the Prime Contract, EV did not retain control of hiring and firing of Stevens employees, EV could not make changes to how the work was being performed by Stevens, and EV did not retain direct supervision of inspectors of the work.

The facts of this case are more similar to those of *Jackson*, another case where the Arkansas Supreme Court addressed the type of control needed by the employer in order to find a duty owed to the employee of a subcontractor. *Jackson*, 606 S.W.2d at 68. The petitioners argued that Petit Jean had a duty to require the construction company to provide sufficient safety devices and proper supervision because there was a provision in the contract where Petit Jean reserved the right to alter the size of the work force and the quality and type of tools and equipment used on the job as well as the right to inspect the work. *Id.* The Court held that such language in the contract did not impose special duties upon Petit Jean for the safety and wellbeing of the construction company's employees. *Id.* (citing *Akins v. Okl. Gas & Electric*, 433 F. Supp. 1345 (W.D. Ark. 1977)).

23

Again, here, like in *Jackson*, while EV employees were on the property and responded to a request from Stevens following the accident to provide Stevens a contact with its scaffolding contractor, Stevens maintained its control of the work on the RTH casing under the Prime Contract. Stevens, not EV, scheduled the work to be performed on the RTH casing on February 17, 2024, and held the Safety Meeting with its employees, including Whittaker, on the morning of February 17, 2024 (Dkt. Nos. 22-2; 22-6, ¶¶ 21, 22). Stevens was in possession and control of the RTH casing at the time of the accident. Further, under the Prime Contract, Stevens accepted sole responsibility for all construction means, methods, techniques, sequences, and procedures as well as responsibility for safety for the Project.

Based on the undisputed material evidence before the Court, EV did not exercise control over the work being performed by Stevens sufficient to establish a duty under Arkansas law.

### 6.    Assumption Of the Risk

EV contends that Whittaker assumed the risk of injury when he removed his fall protection and thus is barred from recovery. Whittaker argues in response that EV's assumption of the risk claim fails because Arkansas courts have held that assumption of the risk is no longer a complete bar to recovery but is merged into comparative fault to create a jury question on whether and the degree to which plaintiff's own alleged fault should reduce his recovery. Having concluded that EV owes no duty to Whittaker with respect to the accident, the Court need not proceed with an analysis of assumption of the risk under current Arkansas law.

### D.    Summary Judgment Conclusion

The Court finds that EV owed no duty to Whittaker. Accordingly, the Court grants EV's motion for summary judgment on Whittaker's negligence claim (Dkt. No. 22). *Smith v. Hansen*, 914 S.W.2d at 289 (determining that if no duty of care is owed, summary judgment is appropriate).

### III.    Other Pending Motions

Also pending before the Court are EV's motion *in limine* No. 1 regarding the application of Arkansas Code Annotated § 16-64-12, Whittaker's motion for leave to file motion to strike or disregard authority first raised at oral argument on the motion *in limine* No. 1, and EV's motion to continue trial (Dkt. Nos. 21; 57; 60).  Because the Court grants EV's motion for summary judgment, the Court denies as moot EV's motion *in limine* No. 1, Whittaker's motion for leave to file motion to strike or disregard authority first raised at oral argument, and EV's motion to continue trial (*Id.*).

### IV.    Conclusion

For the reasons set forth in this Opinion and Order, the Court denies Whittaker's motion to strike Melcic's affidavit in support of EV's motion for summary judgment (Dkt. No. 30).  The Court grants EV's motion for summary judgment (Dkt. No. 22).  Whittaker's negligence claim is dismissed with prejudice.  The Court denies as moot EV's motion *in limine* No. 1, Whittaker's motion to strike or disregard authority first raised at oral argument, and EV's motion to continue trial (Dkt. Nos. 21; 57; 60).

So ordered this 1st day of June, 2026.

Kristine G. Baker
Chief United States District Judge